IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

FILED
IN OPEN COURT

JUN 2 6 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>TINA MARIE ROYSTER, )<br><br>Defendant. ) | **CRIMINAL NO. 2:24-cr-63**<br><br>**Mail Fraud**<br>**18 U.S.C. §§ 1341 and 2**<br>**(Counts 1-6)**<br><br>**Fraud in Connection with**<br>**Major Disaster Benefits**<br>**18 U.S.C. §§ 1040(a)(2) and 2**<br>**(Count 7)**<br><br>**Aggravated Identity Theft**<br>**18 U.S.C. §§ 1028A and 2**<br>**(Count 8-10)**<br><br>**Criminal Forfeiture**<br>**18 U.S.C. § 981(a)(1)(C) &**<br>**28 U.S.C. § 2461** |

**INDICTMENT**

JUNE 2024 Term – at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

INTRODUCTORY ALLEGATIONS

1.      Unemployment Insurance ("UI") is a joint state-federal program that is intended to provide temporary financial assistance to unemployed workers through no fault of their own. The federal UI trust fund finances the costs of administering unemployed insurance programs,

loans made to state unemployment UI funds, and half of extended benefits during periods of high unemployment. States can borrow from the federal fund if their own reserves are insufficient. Each state, including the Commonwealth of Virginia, administers a separate UI program, but all states follow the same guidelines established by federal law.

2.      In March 2020, the coronavirus ("COVID-19") pandemic resulted in the shut-down of numerous businesses and caused millions of American workers to be out of work. On March 13, 2020, the President declared a national emergency under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121 *et seq.* ("Stafford Act"). On March 18, 2020, the President signed into law the Families First Coronavirus Response Act ("FFCRA"), which provided additional flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. The CARES Act expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic. The CARES Act dedicated over $250 billion to give workers more access to unemployment benefits during the public health emergency. The passage of the Continued Assistance Act on December 27, 2021, and then the American Rescue Plan Act on March 11, 2021, extended certain unemployment benefits to September 6, 2021.

3.      Two of the principal ways in which the CARES Act expanded unemployment benefits during the pandemic was by 1) making those benefits available for those who had not traditionally qualified, such as contractors, self-employed, and gig workers; and (2) substantially increasing the amount of money paid to those who qualify for unemployment benefits.

4.      As of April 18, 2020, the President had declared that a major disaster exists in all States and territories under Section 401 of the Stafford Act. On August 8, 2020, to further offset the pandemic impact on American workers, the President authorized the Federal Emergency

Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Funds for lost wage payments. The President authorized the FEMA Administrator to provide grants to participating states, territories, and the District of Colombia to administer delivery of lost wages assistance ("LWA") to those receiving unemployment insurance.

5.      The Virginia Employment Commission ("VEC") is responsible for administering the unemployment compensation program in the Commonwealth of Virginia. This unemployment compensation program provides temporary financial assistance to individuals who become unemployed through no fault of their own. Specifically, prior to the expanded COVID-19 benefits described below, eligible recipients received a minimum of $158 per week in traditional UI benefits.

6.      The VEC divided the unemployment compensation program into the following four UI benefit components based upon the CARES Act, the Continued Assistance Act, the American Rescue Plan Act, and the FEMA LWA authorization:

a.      Federal Pandemic Unemployment Compensation Program ("FPUC") – The CARES Act increased benefits for workers collecting UI by $600 per week for claims effective on or about March 29, 2020, through on or about July 31, 2020, thereby increasing the weekly benefit to $758 per week. The Continued Assistance Act reinstated FPUC at a reduced amount of $300 per week beginning on or about December 25, 2020. The Continued Assistance Act and the American Rescue Plan Act extended the benefits until on or about September 6, 2021.

b.      Pandemic Unemployment Assistance ("PUA") – The CARES Act unemployment benefits for up to 39 weeks of benefits for individuals who did not qualify for traditional UI benefits, including the self-employed, independent contractors, and gig workers or those who are unemployed, partially employed, unable

to work, or unavailable to work due to specific COVID-19 related reason(s). The PUA benefit expansion applied to weeks of unemployment beginning on or about January 27, 2020 through on or about December 31, 2020. The Continued Assistance Act and the American Rescue Plan Act extended FPUC from on or about December 26, 2020 until on or about September 6, 2021.

c.      Pandemic Emergency Unemployment Compensation ("PEUC") – The CARES Act provided up to 13 weeks of unemployment insurance benefits to those who have exhausted their eligibility and applied to weeks of unemployment from on or about March 29, 2020 through on or about December 31, 2020. The Continued Assistance Act and the American Rescue Plan Act extended FPUC from on or about December 26, 2020 until on or about September 6, 2021.

d.      Lost Wages Assistance ("LWA") – The FEMA LWA authorization provided an additional $300 per week to claimants in Virginia who are eligible for at least $100 per week in unemployment insurance compensation. For applicants in Virginia, LWA was automatically paid out in one lump sum of $1,800 on or about October 2020 for six weeks of unemployment between on or about August 1, 2020 (soon after the $600/week PUA benefits expired), and on or about September 5, 2020, so long as the claimant had certified unemployment eligibility during that time period. LWA funds are federal monies, but their distribution was administered by the VEC.

7.      To qualify for PUA, applicants had to first apply for traditional unemployment benefits, be denied, and then file a new application for PUA benefits. Unemployed workers did not file separate claims for PUA, FPUC, and LWA benefits. Rather, an existing approved PUA claim resulted in automatic approval for and payment of FPUC ($600/week) and LWA

4

($300/week) benefits.

8.      Unemployed workers in the Commonwealth of Virginia could file for UI benefits either by phone or through the VEC internet portal. To be eligible for UI benefits, the claimants must have been separated from their employer or had their hours reduced by their employer.

9.      The VEC application for a UI claim requires entry of personally identifiable information ("PII"), including Name, Date of Birth, Social Security Number, Physical Address, and Phone Number. It also requires answering a series of questions to verify eligibility, such as work history, name of the employer, the reason for separation, that the applicant is ready willing and able to work, and, to qualify for PUA, that the applicant lost their job due to COVID-19. In addition, as an extra verification step, the applicant could choose to answer a security phrase.

10.      Once the VEC approves a UI claim, claimants must re-certify their unemployment status on a weekly basis. The claimant must certify that they are ready, willing, and able to work each day during the weeks they claimed UI. Both initial applications and weekly recertifications are attested to as truthful under penalty of perjury.

11.      Successful applicants may choose whether to have VEC deposit their unemployment benefits directly in a linked bank account or loaded onto a prepaid debit card (typically called a "Way2Go" card), which is shipped to the applicant via the United States Postal Service ("USPS") to the physical address listed on the application. For applicants who choose a debit card, a Personal Identification Number ("PIN") for the card is sent to the address listed on the application in a separate mailing. The prepaid debit cards are automatically reloaded with newly disbursed funds via electronic transfers using the Internet.

12.      Under the CARES Act, the VEC approved PUA benefits for workers who normally would not qualify for UI benefits, to include the self-employed, freelancers, and independent contractors. Such workers typically don't have a wage history for the VEC to verify. Based

on this PUA change, the VEC had to rely on and trust the information provided by the claimant as the VEC could not quickly verify the information. To ensure workers who were unemployed due to the pandemic received their benefits in a timely manner, the VEC processed and paid out these claims shortly after the claims were submitted. The certification of those self-employed did not initially require any documentary evidence to be provided in support of that certification.

13.     In or around June 2020, the VEC began reviewing UI claims to identify potentially fraudulent claims. By August 2020, VEC officials learned that inmates in correctional facilities were receiving UI benefits. Incarcerated individuals are not available for employment, nor are they able to seek full-time employment. Further, these individuals are unemployed due to their own criminal conduct and not due to the COVID-19 pandemic. For those reasons, they are not eligible to receive UI benefits, including PUA, LWA, and FPUC. VEC obtained a list of inmates housed by the Virginia Department of Corrections ("VADOC") and cross referenced the list with UI claims. In November 2020, the VEC froze claims made using the PII of known VADOC inmates.

14.     The VEC Internet portal captures the IP address when there has been an account login, such as to file an initial claim or to conduct weekly recertification.

15.     Defendant TINA ROYSTER resided in the city of Norfolk, Virginia. Norfolk, Virginia is located in the Eastern District of Virginia.

### COUNTS ONE-SIX
(Mail Fraud)

16.     The factual allegations contained in Paragraphs 1 through 15 of this Indictment are realleged and incorporated as if set forth fully herein.

17.     During the period from in or about May 2020 through in or about April 2021, in the Eastern District of Virginia and elsewhere, TINA ROYSTER, ("the defendant"), with the intent to defraud, did devise and willingly participate in, with knowledge of its fraudulent nature,

a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent

pretenses, representations, and promises, which scheme and artifice to defraud and for obtaining

money was in substance as follows:

18.     The object of the scheme and artifice to defraud was devised by the defendant to

fraudulently obtain UI benefits that had been expanded due to the COVID-19 pandemic. Specif-

ically, the defendant repeatedly provided false information to the VEC in order to obtain hun-

dreds of thousands of dollars in UI benefits using PII belonging to inmates who were incarcerated

in Virginia at the time, as well as other individuals whose identities were stolen. As a result of

this false information, the defendant caused the VEC to mail debit cards that were loaded with

UI benefits.

19.     On or about the dates set forth below, in the Eastern District of Virginia and else-

where, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining

money and property by means of materially false and fraudulent pretenses, representations, and

promises, and attempting to do so, the defendant knowingly caused to be delivered by U.S. mail

and by private and commercial interstate carrier according to the direction thereon, and at the

place at which it is directed to be delivered by the person to whom it is addressed:

| Count | On or about Date | Description |
|---|---|---|
| 1 | May 28, 2020 | Fraudulent and false VEC application for UI benefits for J.Q., an inmate in the custody of the U.S. Federal Bureau of Prisons, causing the delivery of a Way2Go debit card with UI funds and later payment of LWA funds, resulting in disbursement of approximately $22,442. |
| 2 | June 19, 2020 | Fraudulent and false VEC application for benefits for R.O., an inmate at Chesapeake City Jail, causing the delivery of a Way2Go debit card with UI funds, resulting in disbursement of approximately $14,940. |
| 3 | June 19, 2020 | Fraudulent and false VEC application for benefits for T.H., an inmate at Hampton Roads Regional Jail, causing the delivery of a Way2Go |

7

| | | |
|---|---|---|
| | | debit card with UI funds, resulting in disbursement of approximately $14,782. |
| 4 | June 19, 2020 | Fraudulent and false VEC application for UI benefits for K.K., causing the delivery of a Way2Go debit card with UI funds, and later payment of LWA funds, resulting in disbursement of approximately $22,284. |
| 5 | June 25, 2020 | Fraudulent and false VEC application for benefits for J.R., an inmate at Lawrenceville Correctional Center, causing the delivery of a Way2Go debit card with UI funds, resulting in disbursement of approximately $13,834. |
| 6 | June 30, 2020 | Fraudulent and false VEC application for benefits for J.C., an inmate at Virginia Beach City Jail, causing the delivery of a Way2Go debit card with UI funds and later payment of LWA funds, resulting in disbursement of approximately $18,162. |

(All in violation of Title 18, United States Code, Sections 1341 and 2.)

## COUNT SEVEN
### (Fraud in Connection with Major Disaster Benefits)

20.     The factual allegations contained in Paragraphs 1 through 15 of this Indictment are realleged and incorporated as if set forth fully herein.

21.     On or about August 16, 2020, in the Eastern District of Virginia, TINA ROYSTER, the defendant herein, knowingly made a materially false, fictitious, and fraudulent statement and representation, in that:

        a.     Using VEC's online portal, ROYSTER entered a weekly re-certification on or around August 16, 2020, for J.Q., who, at the time, was a federal inmate in the custody of U.S. Bureau of Prisons.

        b.     In this re-certification, ROYSTER was required to attest that the inmate was ready and willing to work during the week and was actively seeking employment. ROYSTER attested that J.Q. was so ready and willing and active. In truth and fact, as ROYSTER knew, J.Q. was not able to work because she was incarcerated.

22.     ROYSTER knew that these attestations were material, namely, she knew that the UI benefits would not have been approved if she had answered the aforesaid questions truthfully.

23.     The aforesaid attestations occurred in a matter involving a benefit, that is, a record, voucher, payment, money or thing of value, good or service, right, or privilege provided by the United States, a State or local government, or other entity that was authorized, transported, transmitted, transferred, disbursed and paid in connection with a major disaster declaration under Section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act. Specifically, as a result of the false attestations, ROYSTER received LWA funds.

24.     The authorization, transportation, transmission, transfer, disbursement, and payment of the above-described benefit was in and affected interstate and foreign commerce, and

10

the above-described benefit was a record, voucher, payment, money, and thing of value of the United States, and of a department and agency thereof.

(In violation of Title 18, United States Code, Sections 1040(a)(2) and 2.)

## COUNTS EIGHT-TEN

(Aggravated Identity Theft)

25. The factual allegations contained in Paragraphs 1 through 15 of this Indictment are realleged and incorporated as if set forth fully herein.

26. On or about the dates set forth herein, in the Eastern District of Virginia, TINA ROYSTER, the defendant herein, did unlawfully, knowingly, and intentionally use, without lawful authority, a means of identification of another during and in relation to felony violations of provisions in Chapter 63 of Title 18, to wit: Mail Fraud, in violation of Title 18, United States Code, Section 1341.

| Count | On or about Date | Means of Identification | Description of Transaction | During and In Relation to Felony Violation |
|---|---|---|---|---|
| 8 | May 28, 2020 | J.Q.'s name, date of birth, and social security number | Fraudulent application for UI/PUA benefits | Mail Fraud, in violation of 18 U.S.C. § 1341 (See Count 1) |
| 9 | June 19, 2020 | R.O.'s name, date of birth, and social security number | Fraudulent application for UI/PUA benefits | Mail Fraud, in violation of 18 U.S.C. § 1341 (See Count 2) |
| 10 | June 25, 2020 | J.R.'s name, date of birth, and social security number | Fraudulent application for UI/PUA benefits | Mail Fraud, in violation of 18 U.S.C. § 1341 (See Count 5) |

(In violation of Title 18, United States Code, Section 1028A(a)(1) and 2.)

11

12

## CRIMINAL FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1.      The defendant, if convicted of any of the violations alleged in Counts One through Six of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2.      If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

3.      The property subject to forfeiture includes, but is not limited to, the defendant's CashApp account with Cash Tag C*****t230.

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).)

12

UNDERLINED STATES v. TINA MARIE ROYSTER
2:24-cr- U3

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office

A TRUE BILL:

REDACTED COPY

_____

FOREPERSON


JESSICA D. ABER
UNITED STATES ATTORNEY


By: _____
Kristen S. Taylor
Assistant United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Phone: (757) 441-6331
Fax:    (757) 441-6689
Email: Kristen.taylor2@usdoj.gov

13